UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
LUIS GOMEZ ORTIZ,

                              Petitioner,

                                                              19-cr-536 (PKC)
                                                              23-cv-8722 (PKC)

             -against-

                                                      OPINION AND ORDER

UNITED STATES OF AMERICA,

                              Respondent.

------------------------------------------------------------x

CASTEL, U.S.D.J.:

             Luis Gomez Ortiz, proceeding pro se, seeks to vacate his conviction and

sentence, which the Court construes as a section 2255 motion.  28 U.S.C. § 2255.  Gomez Ortiz

pleaded guilty to conspiracy to distribute and possess with intent to distribute cocaine in

violation of 21 U.S.C. §§ 841(b)(1)(B) and 846.  On April 13, 2023, the Court sentenced

Gomez Ortiz principally to 120 months' imprisonment, below the bottom of the advisory

Guidelines range.  (ECF 426.)  He did not appeal the sentence.

             Gomez Ortiz describes his application as a petition for a writ of habeus corpus

under section 2241 seeking to invalidate his conviction and sentence.  28 U.S.C. § 2241.

Generally, a federal prisoner must invoke section 2255 rather than section 2241 when bringing

a claim that their sentence violates the United States Constitution or laws.  Adams v. United

States, 372 F.3d 132, 135 (2d Cir. 2004).  Section 2241, in contrast, "is the proper means to

challenge the execution of a sentence."  Id.  (concluding that a section 2241 motion can be used

by a movant to challenge "the administration of his parole, computation of his sentence by

parole officials, disciplinary actions taken against him, the type of detention, and prison

conditions in the facility where he is incarcerated").  As Gomez Ortiz challenges the validity of his sentence under the Constitution and federal law, the Court considers his motion under section 2255.

The Court notified Gomez Ortiz that his application would be construed as a motion under section 2255 and gave Gomez Ortiz sixty days to notify the Court in writing if he wished to withdraw his motion or the application would remain designated as a section 2255 motion.  (23 Civ. 8722, ECF 3.)  Gomez Ortiz did not file an objection with the Court, but he filed a notice of appeal to the Second Circuit regarding the Court's Order.  (23 Civ. 8722, ECF 5.)  The Second Circuit dismissed the appeal.  (23 Civ. 8722, ECF 6.)  After the Court received no notice from Gomez Ortiz that he wanted to withdraw his application, the Court ordered the government to respond to Gomez Ortiz's petition.  (23 Civ. 8722, ECF 7.)  The government filed a response in opposition to the motion, addressing Gomez Ortiz's arguments.  (ECF 590.)

For the reasons that will be explained, Gomez Ortiz's motion for relief will be denied.

BACKGROUND

A.  The Offense Conduct.

Gomez Ortiz's offense conduct is described in his Final Presentence Report (the "PSR"), whose facts were adopted at sentencing as the Court's findings of fact without objection from Gomez Ortiz or the government.  (ECF 435 at Tr. 3.)

Gomez Ortiz was a member of a Puerto Rico-based drug trafficking organization ("DTO").  (ECF 296 ¶ 11.)  Gomez Ortiz recruited Daniel Rodriquez, a Bronx-based individual and one of his co-defendants, to participate in the DTO's activities.  (Id. ¶¶

23, 31.)  In April 2019, Gomez Ortiz traveled to the Bronx to assist Rodriquez with receipt of a shipment of DTO packages that contained cocaine.  (Id. ¶ 31.)  Gomez Ortiz instructed Rodriquez how to open the packages to avoid damaging the cocaine, count the bricks, confirm the number of bricks with the DTO, package the cocaine into duffel bags, load the cocaine into cars of co-conspirators, and keep watch for any suspicious activity.  (Id.)  Between April and May 2019, a total of seven DTO packages containing cocaine were shipped to Rodriquez in the Bronx.  (Id. ¶ 23.)  For subsequent shipments, Rodriquez acted as directed by Gomez Ortiz and another DTO member by removing the cocaine from the shipments, disposing of the packaging, and coordinating the delivery of the cocaine to various predetermined individuals. (Id. ¶ 23.)  In April 2019, Rodriquez traveled to Puerto Rico to meet with Gomez Ortiz and other co-conspirators to pick up a cash payment for his activities on behalf of the DTO.  (Id.)

Law enforcement began investigating the Puerto Rico DTO following a gunpoint robbery of approximately 121 kilograms of the DTO's cocaine that had been shipped to Rodriquez.  (Id. ¶ 12.)  The robbery occurred on May 29, 2019, inside a Bronx, New York apartment.  (Id.)  Two victims of the robbery suffered lacerations from being pistol-whipped. (Id. ¶ 32.)  Another victim sustained serious bodily injury after he jumped from a third-floor apartment window in an attempt to escape the armed robbers.  (Id.)  After the robbery, the Puerto Rico DTO continued to transport cocaine into the United States.  (Id. ¶ 11.)  Between approximately October 2018 and June 2019, the government estimated that the DTO shipped more than 4,500 kilograms of cocaine from Puerto Rico into the continental United States, including to addresses in New York City, Florida, Connecticut, and Massachusetts.  (Id.)

On July 7, 2021, a grand jury returned a sealed indictment charging Gomez Ortiz and his co-defendants with conspiracy to distribute and possess with intent to distribute a

controlled substance in violation of 21 U.S.C. § 841(a)(1).  (ECF 151.)  On July 8, 2021, an

arrest warrant was issued for Gomez Ortiz.  (ECF 152.)  On July 21, 2021, Gomez Ortiz was

arrested in Florida.  (ECF 296 ¶ 31.)  At the time of his arrest, he consented to a search of his

apartment where law enforcement recovered six cellphones and $104,824 in cash recovered

next to a currency counting machine.  (Id.)  Based on the information recovered from one of

the cellphones, the government believes Gomez Ortiz's participation in the narcotics

conspiracy continued through July 2021.  (Id.)

B.  The Proceedings.

On June 7, 2022, Gomez Ortiz pled guilty to conspiracy to distribute and

possess with intent to distribute cocaine, a lesser-included offense within Count One of the

Superseding Indictment.  (ECF 268 at Tr. 2, 7.)  Throughout the plea proceeding, Gomez Ortiz

was under oath.  (Id. at Tr. 3.)  The Court explained that, pursuant to Gomez Ortiz's plea

agreement, Gomez Ortiz had agreed that if the Court sentenced him to a sentence within a

stipulated guidelines range of 235 months to 293 months or below that range, he waived his

right to appeal or collaterally attack the sentence.  (Id. at Tr. 13.)  Gomez Ortiz stated that he

understood this provision of the plea agreement.  (Id.)  The Court found that the plea

agreement was "knowingly, voluntarily and intelligently entered into including the provision

waiving the right to appeal or collaterally attack a sentence under specified conditions."  (Id. at

Tr. 16-17.)

During the plea proceeding, the Court asked Gomez Ortiz whether he was

satisfied with his lawyer's representation of him, which he answered affirmatively.  (Id. at Tr.

5.)  When asked by the Court what he had done to lead him to believe he was guilty of the

crime charged in Count One, Gomez Ortiz stated: "In April of 2019, knowing and intentionally, I participated in a conspiracy with other people to distribute at least 500 grams of cocaine from Puerto Rico to the Bronx, New York. I knew that this was illegal." (Id. at Tr. 14-15.) The Court found, based upon Gomez Ortiz's responses and demeanor, that Gomez Ortiz knew his rights, the consequences of pleading guilty, and that there was a factual basis for his guilty plea. (Id. at Tr. 16.)

  Gomez Ortiz's sentencing took place on April 13, 2023. (Minute Entry, April 13, 2023.) At sentencing, defense counsel confirmed that Gomez Ortiz had read and reviewed the PSR. (ECF 435 at Tr. 3.) The Court adopted as its findings of fact the facts as set forth in the PSR. (Id.) Without objection, the Court found a Total Offense Level of 38 and a Criminal History Category of I, yielding a statutory sentencing range of a minimum 60 months' imprisonment with a maximum of 40 years' imprisonment, and a Guidelines range of 235 to 293 months' imprisonment. (Id. at Tr. 3-4.) The Court heard from defense counsel, the defendant, and the government. The Court gave its statement of reasons for the sentence to be imposed, confirmed that it considered each of the facts under 18 U.S.C. § 3553(a), and sentenced Gomez Ortiz to a below-guidelines sentence of 120 months' imprisonment. (Id. at Tr. 28-29, 34.) Gomez Ortiz did not appeal his sentence.

  Gomez Ortiz asserts four grounds for relief: (1) the Court "failed to apply Rules as required under Due Process"; (2) "18 USC [§§] 3001 and 3041 were ignored"; (3) "Rule 3 Complaint Rule was ignored"; and (4) that his imprisonment is in violation of the Eighth Amendment. (23 Civ. 8722, ECF 1at 7-8.)

LEGAL STANDARD

"Section 2255 provides relief in cases where the sentence: (1) was imposed in violation of the U.S. Constitution or the laws of the United States; or (2) was entered by a court without jurisdiction to impose the sentence; or (3) exceeded the maximum detention authorized by law; or (4) is otherwise subject to collateral attack."  Adams, 372 F.3d at 135 (citing 28 U.S.C. § 2255).  Review of a section 2255 motion is "'narrowly limited in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources.'"  United States v. Hoskins, 905 F.3d 97, 102 (2d Cir. 2018) (quoting Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996)).  In order to prevail on a section 2255, a movant must show a "constitutional error, lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424 (1962)).

An evidentiary hearing may be necessary if the motion "set[s] forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the movant] to relief."  Gonzalez v. United States, 722 F.3d 118, 131 (2d Cir. 2013).  But "[i]f the moving papers themselves disclose the inadequacies of the defendant's case . . . [the court] need not resort to an evidentiary hearing."  United States v. Salameh, 54 F. Supp. 2d 236, 248 (S.D.N.Y. 1999) (Duffy, J.) (citing United States v. Helmsley, 985 F.2d 1202, 1210 (2d Cir. 1993)).

I.    <u>Gomez Ortiz Validly Waived His Right to Appeal or Collaterally Attack His Sentence.</u>

When a defendant knowingly and voluntarily waives his right to appeal or collaterally attack a sentence within a stipulated guidelines range, he may not then appeal or attack the sentence, except in limited circumstances.  <u>United States v. Gomez-Perez</u>, 215 F.3d 315, 318-19 (2d Cir. 2000).  "'Waivers of the right to appeal a sentence are presumptively enforceable' and the exceptions to this rule 'occupy a very circumscribed area of our jurisprudence."  <u>United States v. Borden</u>, 16 F.4th 351, 354-55 (2d Cir. 2021) (citations omitted).  A sentence is permissible even if it is "conceivably imposed in an illegal fashion or in violation of the guidelines, but yet was still within the range contemplated in the plea agreement."  <u>Gomez-Perez</u>, 215 F.3d at 319.

The record shows that Gomez Ortiz's waiver of his right to challenge a sentence at or below the "Stipulated Guidelines Range" in the plea agreement was knowing, voluntary, and intelligently entered into.  At the plea proceeding, the Court asked Gomez Ortiz to identify his signature on the plea agreement and Gomez Ortiz identified his signature.  (ECF 268 at Tr. 11.)  The Court then asked Gomez Ortiz whether he discussed the agreement with his attorney, if he was able to ask his attorney questions regarding the agreement, and if his attorney was able to answer his questions to his satisfaction.  (<u>Id.</u>)  Gomez Ortiz answered affirmatively to each question.  (<u>Id.</u>)  The Court then asked if the plea agreement contained all of Gomez Ortiz's understandings with the government, to which he replied, "Yes."  (<u>Id.</u> at Tr. 11-12.)  Gomez Ortiz also denied that anyone had threatened, forced, or promised him anything of value in order to get him to sign the plea agreement or plead guilty.  (<u>Id.</u>)

The Court then asked Gomez Ortiz if he and the government had agreed upon a Stipulated Guidelines Range of 235 to 293 months' imprisonment with a minimum term of 60 months' imprisonment.  (Id. at Tr. 12.)  Gomez Ortiz stated the Stipulated Guidelines range was correct.  (Id.)  The Court explained that Gomez Ortiz was waiving his right to collaterally attack or appeal his sentence if he was sentenced within the Stipulated Guidelines Range:

> THE COURT: That agreement is binding on you and its binding on the government . . . . You have agreed that if I sentence you within the stipulated guidelines range of 235 months to 292 months imprisonment or below that range, that you will not appeal or collaterally attack the sentence. You have waived your right to appeal or collaterally attack the sentence unless the sentence is above 293 months imprisonment. Do you understand that?
>
> THE DEFENDANT: Yes.

(Id. at Tr. 13.)

At the sentencing, noting that Gomez Ortiz did not engage in any violence as well as his role in the offense, among other factors, the Court sentenced him principally to a below Guidelines sentence of 120 months' imprisonment, 115 months below the low end of the Stipulated Guidelines range.  (ECF 435 at Tr. 29-34.)  The Court concludes that Gomez Ortiz's waiver of his right to challenge a sentence under specified conditions was knowingly, voluntarily, and intelligently entered into and that it is in all respects enforceable.  Gomez Ortiz has not demonstrated that any of the narrow exceptions to waiver enforceability applies to him and, therefore, the waiver of the right to appeal or collaterally attack the sentence forecloses his motion under section 2255.

II.    Gomez Ortiz's Challenge is Also Procedurally Barred.

Generally, a defendant is in procedural default if a claim raised in a section 2255 motion was not first raised in a direct appeal. Bousley v. United States, 523 U.S. 614, 622 (1998); see also Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007). "This rule recognizes the 'tension' between collateral challenges and 'society's strong interest in the finality of criminal convictions' and, thus, 'makes it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack.'" Rajaratnam v. United States, 736 Fed. App'x 279, 281 (2d Cir. 2018) (summary order) (quoting Yick Man Mui v. United States, 614 F.3d 50, 53-54 (2d Cir. 2010)). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeus only if the defendant can first demonstrate either 'cause' and actual 'prejudice' or that he is actually innocent." Gupta v. United States, 913 F.3d 81, 84 (2d Cir. 2019) (citations omitted).

To demonstrate "cause," a movant must show "some objective factor external to the defense" prevented him from raising the issue earlier. Bloomer v. United States, 162 F.3d 187, 191 (2d Cir. 1998) (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)). "Cause" may be shown by a legal or factual basis "'so novel that its legal basis was not reasonably available to counsel.'" Gupta, 913 F.3d at 84 (quoting Reed v. Ross, 468 U.S. 1, 16 (1984)). Gomez Ortiz fails to establish a legal or factual basis for his failure to file a direct appeal. In his filing, Gomez Ortiz acknowledges that he did not file a direct appeal. (23 Civ. 8722, ECF 1 at 3.) He states that he could not directly appeal because he alleges that the Court's sentence was "void" as a "non-final judgment," which cannot be appealed under 28 U.S.C. § 1291. (Id. at 3-4.)

- 9 -

The judgment against Gomez Ortiz was a final judgment.  "[F]or the purposes of § 2255 motions, an unappealed federal criminal judgment becomes final when the time for filing a direct appeal expires."  Moshier v. United States, 402 F.3d 116, 118 (2d Cir. 2005) (per curiam).  The judgement was entered on April 14, 2023.  (ECF 426.)  At sentencing, the Court informed Gomez Ortiz of the strict time limits for filing an appeal:

> THE COURT: Mr. Gomez Ortiz, you have a right to appeal the sentence the court has imposed on you. If you cannot afford the cost of an appeal, you may apply for leave to appeal as a poor person. The time limits for filing an appeal are brief and they are strictly enforced. If you request, the Clerk of Court will prepare and file a notice of appeal on your behalf immediately. Do you understand all that?
>
> THE DEFENDANT: Yes.

(ECF 435 at Tr. 37.)  Gomez Ortiz did not file a direct appeal and his conviction became final on April 28, 2023, fourteen days after it was entered with the expiration of the time for filing such a notice of appeal.  See Superville v. United States, 771 F. App'x 28, 31 (2d Cir. 2019) (summary order) (concluding that under section 2255 judgments become final if an appeal is not filed within fourteen days of the judgment).  Therefore, as the judgment was final, Gomez Ortiz has not made a requisite showing of cause for failure to file a direct appeal.

Gomez Ortiz also fails to allege "actual innocence."  Actual innocence means "factual innocence, not mere legal insufficiency."  Bousley, 523 U.S. at 623.  "To establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'"  Id. (quoting Schlup v. Delo, 513 U.S. 298, 328-29 (1995)).  Gomez Ortiz does not argue that he did not commit the acts that led to his guilty plea and sentencing.  Rather, the closest Gomez Ortiz comes to allege

"actual innocence" are his claims that his sentence was unconstitutional because he was never proven to have committed "any offense against the United States" and that his arrest was in violation of Federal Rule of Criminal Procedure 3. (23 Civ. 8722, ECF 1 at 7.) But any present claim of actual innocence would be inconsistent with his sworn admission under oath at the plea allocation. At the plea allocution, when asked what led him to believe that he was guilty of the offense, he stated, "In April of 2019, knowingly and intentionally, I participated in a conspiracy with other people to distribute at least 500 grams of cocaine from Puerto Rico to the Bronx, New York." (ECF 268 at Tr. 15.) In light of his inculpatory statement, any reasonable juror would conclude that Gomez Ortiz participated in a conspiracy to distribute and possess with intent to distribute cocaine in violation of sections 841(b)(1)(B) and 846. See Rosario v. United States, 164 F.3d 729, 733-34 (2d Cir. 1998). He has not explained why his previous admission should now be disregarded on this motion. Therefore, Gomez Ortiz cannot satisfy the "actual innocence" exception to procedural default.

All of Gomez Ortiz's claims could have been raised on direct appeal and, therefore, are procedurally barred because Gomez Ortiz has failed to demonstrate cause for failure to raise the issues on direct appeal or made a claim of actual innocence.

CONCLUSION

        Gomez Ortiz's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is DENIED. The Clerk is respectfully asked to terminate the motion (19 Cr. 536, ECF 590) and close the case captioned Gomez Ortiz v. United States, 23 Civ. 8722 (PKC).

        Gomez Ortiz has not made a substantial showing of the denial of a constitutional right and, accordingly, a certificate of appealability will not issue. 28 U.S.C. § 2253; see Blackman v. Ecrole, 661 F.3d 161, 163-64 (2d Cir. 2011). This Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and in forma pauperis status is denied. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

        SO ORDERED.


                                  P. Kevin Castel
                           United States District Judge


Dated: June 4, 2025
     New York, New York


MAILED TO:

Luis Gomez Ortiz
No. 56450-509
FCI Coleman Low
Federal Correctional Institution
P.O. Box 1031
Coleman, Florida 33521